THE NEW ENGLAND TRUST COMPANY & another, trustees, *vs.* DANIEL J. TRIGGS, trustee, & others.

Middlesex.    April 9, 1958. — May 6, 1958.

Present: RONAN, SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Trust,* Deposit of trust funds in commercial department of trust company. *Trust Company,* Deposit of trust funds in commercial department.

Where this court had adjudicated that a trust company, trustee under a will, by reason of imprudently keeping money of the trust on deposit in its commercial department long after a time when the money should have been invested, became accountable to the trust for the profits which resulted to it from such use of the money after that time, or

alternatively, at the election of the beneficiaries, for the fair value of its use after that time, profits signified actual gain to the company from such use of the money and should be ascertained by applying to the trust money the percentage resulting from the ratio of the net operating earnings after taxes of the commercial department to the commercial deposits, and on the record the fair value of the use of the trust money should be ascertained by applying to the trust money the rate of interest which the company would have had to pay had it borrowed a like amount from the Federal Reserve Bank.

PROCEEDING in the Probate Court for the county of Middlesex for allowance of accounts of the trustees under the will of Lewis Dewart Apsley, late of Hudson.

Following the decision of this court reported in 334 Mass. 324, there was a report by *Monahan, J.*

*Robert G. Dodge, (Eric Verrill* with him,) for the petitioners.
*Daniel J. Triggs,* for the respondents.

WHITTEMORE, J. A report by the probate judge under G. L. c. 215, § 13, without decision, brings before us the construction and application of our rescript in this case at an earlier stage. See 334 Mass. 324, 340.

In that decision we held that, notwithstanding an exculpatory clause in the trust instrument, The New England Trust Company, as managing trustee, was under a liability to the trust because it had failed to invest trust funds for an unreasonable time and had retained the uninvested funds in its commercial department, more precisely described, it now appears, as its "banking department." The funds had been deposited in that department as permitted by G. L. c. 172, § 54A. We said (page 340), "Whether or not the failure to invest would be a 'breach of trust' apart from the aspect of profit to the trustee, we hold that there is liability here to account for the profits which resulted from such withholding, or alternatively for the fair value of the use of the money . . . ." The language of the opinion (pages 340–342) shows that, as to profits, what we were referring to was the "incidental profit" (page 341) which "resulted from such withholding" (page 340) and from "the use of the subject funds along with . . . [the trust company's] other commercial deposits" (page 341). The language shows also

that the alternative measure of the "advantage to the trustee" (page 341) from the use of the trust assets (made available because there might in some case be no profit) was to be what "the trustee would have had to pay for the like use of a like amount from other sources" (page 341). We said that "[t]his is 'in hand' in the sense that it would otherwise have been paid out and is substantively in this respect like a receipt from or profit on the trust fund" (page 341). These references show, we think, what we intended in the rescript which reads in part, "Further hearing is to be had in the Probate Court for the purpose only of ascertaining the net profits of the commercial department in the relevant periods, and, for alternative use, the fair value of the use of the deposited funds . . . ." We were stating and applying not a general rule for a trustee's accountability for a breach of trust but rather a rule for giving the trust the actual gain of the trustee from the use of trust assets or, for alternative use, a substitute therefor. We indicated (page 341) that we were not "imposing liability of the kind which the exculpatory clause has excused." We need not consider to what extent in other circumstances the principles relied on by the respondent would be applicable.

The correct rule for determining the percentage of profits with which the trust company is chargeable is the percentage that the net operating earnings after taxes of the banking department of the trust company in each of the years 1948, 1949, 1950 and 1951 is of the deposits in these years. Thus, in accordance with paragraph 4 of the stipulation of the parties, the amount with which the trust company is chargeable under this alternative is $1,637.44 plus interest at six per cent per annum from September 19, 1951.

In view of the stipulated facts that the trust company "on the few occasions during the four years in question, when it found it necessary or advisable to borrow, always borrowed either from the Federal Reserve Bank at its current discount rate, or bought from another bank, at the same or a lower rate, a part of such other bank's reserve funds at the Federal Reserve Bank which were in excess of the reserve

required of it," the correct procedure for determining the amount for which the trust company must account under the alternative of the fair value of the use of the money is to apply to the principal sums the rate of interest which the trust company would have had to pay had it borrowed like sums from the Federal Reserve Bank. Paragraph 6 of the stipulation of the parties establishes that under this alternative the total liability of the trust company is $5,193.64 plus interest thereon at six per cent per annum from September 19, 1951.

The case is remanded to the Probate Court for the entry of a final decree in accordance with the earlier rescript and the foregoing construction thereof.

*So ordered.*